IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUSTIN JACOBS, D.O.,<br><br>2701 Calvert Street N.W. #425<br>Washington, D.C. 20008<br>    Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY<br>Two Commerce Square<br><br>2001 Market Street, Suite 1500<br><br>Philadelphia PA 19103<br><br><br>    Defendant.<br>Serve:<br><br>CT Corporation System, Inc.<br><br>1015 15th Street, N.W.<br><br>Suite 1000<br><br>Washington, D.C. 20005 | No:   21-CV-323 |

# COMPLAINT

Now comes the Plaintiff, AUSTIN JACOBS, D.O., by his attorney, RICHARD D. CARTER, and complaining against the Defendant, RELIANCE STANDARD LIFE INSURANCE COMPANY, he states:

## *Jurisdiction and Venue*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of a group-long term disability ("LTD") insurance policy ("the Policy"), underwritten and administered by Reliance Standard Life Insurance Company ("RELIANCE"), for the benefit of employees of Medstar Georgetown, which includes Plaintiff. Additionally, this action may be brought before this court pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Venue is proper in the District of Columbia where Plaintiff resides. 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

## *Nature of the Action*

4. This is a claim seeking recovery of disability benefits claimed to be due under an employee welfare benefit plan, which provided long-term disability insurance and Life insurance premium waiver benefits under policy number LTD126118 ("the Policy"). It also seeks benefits from the Life Insurance Premium Waiver. This action is brought pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. §

1132(a)(1)(B)) and Virginia Law. Plaintiff also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g).

5. Dr. Jacobs was a Physician and Associate Professor at Medstar Georgetown University Hospital. He was previously a Resident and then Chief Resident at Medstar Georgetown and has been continuously employed at Medstar Georgetown since 2014.

6. In 2018 the Plaintiff became disabled by complications of a failed gastric sleeve surgery.

7. Dr. Jacobs has seen doctors at the Johns Hopkins University Medical Center, Sibley Hospital, and Georgetown University Hospital all preeminent institutions, in an attempt to gain relief.

8. Despite that evidence Reliance found that Dr. Jacobs could work and denied his benefits. An Appeal was unsuccessful and this case is now ripe for adjudication.

## The Parties

9. Plaintiff, Austin Jacobs, M.D. ("Dr Jacobs" or "Plaintiff") age 30, was at the time of benefit denial a Chief Resident of Washington, D.C.; and the events, transactions, and occurrences relevant to Plaintiff's claim of disability took place predominately within the District of Columbia.

10. Defendant, Reliance, was at all times relevant hereto doing business throughout the United States and within the District of Columbia and delivered coverage to Plaintiff in the District.

11. At all times relevant hereto, the Policy constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1). Incident to his status as an employee of Medstar Georgetown, Plaintiff received coverage under the Policy as a "participant" as defined by § 1002(7). This claim relates to benefits under the foregoing Policy. See Ex 1, Plan

## Statement of Facts

12. Austin Jacobs, D.O. graduated from Medical School and accepted a Residency with Medstar Georgetown University Hospital which began on June 13, 2014. Dr Jacobs excelled as a Resident and He was awarded a Chief Residency after his time as a Resident was completed.

13. On November 29, 2017, he underwent gastric sleeve surgery which resulted in massive complications. Since the failed surgery, Dr. Jacobs has required numerous hospitalizations for, sepsis, persistent gastric leaks/GE junction dehiscence, multiple pulmonary and abdominal abscesses, multiple enterocutaneous and colonic fistulas, wound care, pneumonia, and deconditioning. Dr. Jacobs requires nutritional support (TPN), as well as additional surgery to repair. Dr. Jacobs has received occupational, physical, cognitive, and speech therapy as part of his treatment, and remains with TPN for nutritional support.

14. Dr. Jacobs remains completely disabled with limited ability to even complete normal activities of Daily Living let alone pursue his employment in Internal Medicine.

### *The ERISA Long-Term Disability Plan*

15. As a benefit of his employment with Medstar Georgetown., Plaintiff received long-term disability coverage under a group disability insurance plan administered by Defendant. According to the Plan "ELIGIBILITY REQUIREMENTS: A person is eligible for insurance under this Policy if he/she:

(1) is a member of an Eligible Class, as shown on the Schedule of Benefits page; and

(2) has completed the Waiting Period, as shown on the Schedule of Benefits page. See Plan Ex 1

35. Dr. Jacobs was continuously a member of an Eligible Class since 2014.

36. The Reliance Plan set out the Eligibility regarding rules in the Plan. It stated "CLASS 2, 4, 6, 7, 8, 10, 11, 12, 14, 16, 18, 20, 22, 23, 25 & 27:

Benefits will not be paid for a Total Disability:

(1) caused by;

(2) contributed to by; or

(3) resulting from;

a Pre-existing Condition unless the Insured has been Actively at Work for one (1) full day following the end of twelve (12) consecutive months from the date he/she became an Insured."

16. The Plan defines pre-existing as "Pre-Existing Condition" means any Sickness or Injury for which the Insured received medical Treatment, consultation, care

5

or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to the Insured's effective date of insurance. The Pre-existing Condition limitation does not apply to any condition named in the application."

17. The Reliance ERISA Plan contained the following Disability standard:

""Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

(1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;

(a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

(b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

(2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis." See Ex 1 Plan

18. Because of his disability, Dr. Jacobs was required to cease work on September 17, 2018 and apply for Disability Insurance with Reliance

19. On May 2, 2019, Reliance denied his application for benefits saying "Information provided by your employer indicates that you became a Physician with Medstar Health, Inc. effective July 1, 2018, however, you were on medical leave at that time. As an employee of Georgetown Physicians Group, you would be considered a member of an eligible class and covered for benefits with the plan once you returned to work for one full day as an active, full time employee udder Class 8."  It concluded "You did not need to satisfy a new service Waiting Period because you were "continuously employed" by Medstar Health, Inc since 06/13/2014."  In explicably, Reliance ignored the fact that Dr. Jacobs had worked more than one day in his new position, ignored the fact that he had been continuously employed at MedStar since June 13, 2014 and denied his claim under the pre-existing condition limitation. See Denial Ex 2

20. On October 28, 2019 Dr. Jacobs appealed their decision showing that he worked full time and worked more than 1 day which is all that he had to do pursuant to the terms of the Plan.  See Appeal Ex 3.

21. On December 16, 2019 Reliance denied the appeal using a new reason and completely ignoring their original bogus reason for the denial. Recognizing that their original pretext, that Dr. Jacobs had not worked since becoming a member of an eligible class would fail Reliance came up with a new reason, Reliance now claimed that he had started in 2018 and invoked the pre-existing condition for a new reason that their prior denial stated did not apply.

22. Reliance's denial said that since he began work effective July 1, 2018 and became disabled in September 2018 his claim would be denied based on the pre-existing condition exclusion. The denial summarized "Therefore, based on the totality of information within his claim file, his condition at the date of loss was caused by, contributed to by or resulted from consultation, medical treatment and medications that he received during the pre-x period of May 13, 2018 to August 13, 2018. Therefore, we agree with the Claim Department's decision to deny benefits in accordance with the Policy's Pre-Existing Condition Limitation." See Denial Ex 4

23. This reason was never raised by Reliance prior to this and they had affirmatively said in the original denial "You did not need to satisfy a new service Waiting Period because you were "continuously employed" by Medstar Health, Inc since 06/13/2014." Ex 2   Initial Denial

24. Dr. Jacobs sent a letter on March 23, 2020 to Reliance pointing out that Reliance had used a new reason and that he could not appeal something he had never seen. The Appeal included a letter from Cathy Miles, who is the director of Leave Management at MedStar Health. In the letter she says, "This letter is to confirm that Austin Jacobs has been employed with MedStar Georgetown University Hospital since June 13, 2014. Dr. Jacobs worker for MedStar

8

in a fulltime capacity (40 hours per week) from his date of hire through February 11, 2018".  As Reliance's own plan points out on page 1.9, a fulltime employee of Georgetown University Hospital from 2014 would be covered under the terms of the MedStar plan.  Because Dr. Jacobs was first employed in 2014, and his disability occurred as a result of surgery in 2017, this is not a situation where preexisting condition could be used as an avoidance of Reliance's obligations to pay disability insurance.   See Ex 5 and attachment, letter of Cathy Miles

25. On May 7, 2020 Reliance sent a response saying that there were no new appeals and the denial would stand. See Ex 6 Denial of Second Appeal.

26. The matter is now exhausted and ripe for Adjudication, See Ex 4. Denial by RELIANCE.

## COUNT I

(Failure to provide benefits under ERISA)

27  Dr. Jacobs re-alleges and incorporates by reference paragraphs 1 through and including 26 above.

28. The disability coverage provided to Dr. Jacobs was part of an "employee welfare benefit plan" within the meaning of ERISA section 3 (1), 29 U.S.C. ⌧ 1002 (1), in that Medstar Health's plan was established and maintained for the purpose of providing its participants or their beneficiaries disability benefits through the purchase of insurance.

9

29. Dr. Jacobs was a "plan participant" of the employee welfare benefit plan established and maintained by Medstar Health within the meaning of ERISA section 3 (7), 29 U.S.C. § 1002 (7), in that he was or reasonably expected to become eligible to receive disability benefits under the Reliance Plan.

30. Reliance is a "fiduciary" within the meaning of ERISA section 3 (21), 29 U.S.C. § 1002 (21), in that it exercises discretion with respect to decisions regarding benefits under the plan.

31. Dr. Jacobs is "totally disabled" as defined by the Reliance Plan and is entitled to benefits under its terms, and any amendments and/or modifications thereof.

32. Dr. Jacobs complied with all terms and requirements of the Reliance Plan in requesting disability benefits for his physical disability and providing Reliance with information documenting his physical disability.

33. Reliance violated the requirements of ERISA section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), by failing to provide benefits under the Reliance Plan for which Dr. Jacobs was eligible despite Dr. Jacobs's request for benefits.

34. The denial of these benefits by Reliance was and is arbitrary, capricious, and not made in good faith, unsupported by substantial evidence, an abuse of discretion, erroneous as a matter of law, and in violation of ERISA.

35. As a direct and proximate result of Reliance's actions, Dr. Jacobs has lost his monthly benefits since September 2018, and will continue to accrue a loss of net benefits hereafter under the terms of the Reliance Plan.

36. As a direct and proximate result of Reliance's actions, Dr. Jacobs has been caused to incur attorneys' fees in an attempt to secure payment of disability benefits justly due to him.

## COUNT II

(ERISA violation - no full and fair review)

37. Dr. Jacobs re-alleges and incorporates by reference paragraphs 1 through and including 36 above.

38. The disability insurance provided by Medstar Health to its employees is part of an "employee welfare benefit plan" within the meaning of ERISA section 3 (1), 29 U.S.C. § 1002 (1), in that ECM established and maintained it for the purpose of providing its employees or their beneficiaries disability benefits through the purchase of insurance.

39. Reliance is a "fiduciary" with respect to the Reliance Plan within the meaning of ERISA section 3 (21), 29 U.S.C. §1002 (21), in that it exercises discretion with respect to decisions regarding benefits.

40. Dr. Jacobs was at all relevant times, a "plan participant" of the employee welfare benefit plan established and maintained by Medstar health within the meaning of ERISA section 3 (7), 29 U.S.C. § 1002 (7), in that Dr. Jacobs

was eligible to receive benefits from the employee benefit plan that covered the employees of Medstar Health.

41.   Dr. Jacobs is totally disabled and is entitled to benefits under the physical terms of the Reliance Plan and any modifications thereof.

42.   Reliance violated ERISA by failing to provide the full and fair review required by ERISA section 503, 29 U.S.C. § 1133.  Reliance failed to fully consider all of the evidence submitted.  Reliance also invoked exclusions and requirements not contained in the Plan that covered Dr. Jacobs.

## *Relief Sought*

WHEREFORE, Plaintiff prays for the following relief:

A.   That the court enter judgment in Plaintiff's favor and against the Defendant and that the court orders the Defendant to pay all accrued long-term disability benefits to Plaintiff in an amount equal to the contractual amount of benefits to which he is entitled from September 17, 2018 to the present;

B.   That the Court order the Defendant to pay Plaintiff compounding prejudgment interest on all contractual benefits that have accrued prior to the date of judgment;

C.   That the Court Order Defendant to continue paying Plaintiff LTD benefits in an amount equal to the contractual amount of benefits to which he is entitled through the Policy's Maximum Benefit Period, so long as he continues to meet the policy conditions for continuance of benefits;

D.   That the Court Award Plaintiff her attorney's fees pursuant to 29 §

1132(g); and

  E. That Plaintiff be awarded any and all other contractual and/or equitable relief to which he may be entitled, as well as the costs of suit.

February 4, 2021             Respectfully Submitted,

                  AUSTIN JACOBS, D.O.

                  _____/s/_____
                  Richard D. Carter
                  VSB # 32257
                  Richard D. Carter, LLC
                  Attorney for Austin Jacobs, D.O.
                  416 Jefferson Street
                  Annapolis, MD 21403
                  (703) 549-0076 (phone)
                  (703) 542-1273 (fax)
                  rcarter@richcarterlaw.com